UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

THOMAS K. DOWNING,

    Plaintiff,

v.                                             Case No: 6:16-cv-872-Orl-40KRS

OSCEOLA COUNTY BOARD OF COUNTY COMMISSIONERS,

    Defendant/Third Party Plaintiff,

INMATE CALLING SOLUTIONS, LLC,

    Third Party Defendant.
_____/

## ORDER

This cause comes before the Court without oral argument on the following:

1. Defendant/Third-Party Plaintiff Osceola County Board of County Commissioners' (the "County") Motion for Summary Judgment Against Plaintiff Thomas Downing with Incorporated Memorandum of Law (Doc. 45), filed July 3, 2017;

2. Plaintiff's Response in Opposition to Defendant, Osceola County, Florida's, Motion for Summary Judgment (Doc. 52), filed July 16, 2017;

3. Osceola County Board of County Commissioners' Reply to the Plaintiff's Response in Opposition to Its Motion for Summary Judgment (Doc. 59), filed July 28, 2017;

4. Third-Party Defendant's Dispositive Motion for Final Summary Judgment and Incorporated Memorandum of Law (Doc. 46), filed July 3, 2017;

5. Third-Party Plaintiff Osceola County Board of County Commissioners' Response in Opposition to Motion for Final Summary Judgment (Doc. 55), filed July 17, 2017;

6. Third-Party Defendant Inmate Calling Solutions, LLC d/b/a ICSolutions' Reply to Third-Party Plaintiff Osceola County Board of County Commissioners' Response in Opposition to Third-Party Defendant's Motion for Summary Judgment (Doc. 60), filed July 31, 2017;

7. Third-Party Plaintiff Osceola County Board of County Commissioners' Motion for Summary Judgment and Incorporated Memorandum of Law (Doc. 47), filed July 3, 2017;

8. Third-Party Defendant's Response in Opposition to Third-Party Plaintiff Osceola County Board of County Commissioners' Dispositive Motion for Summary Judgment and Incorporated memorandum of Law (Doc. 54), filed July 17, 2017; and

9. Third-Party Plaintiff Osceola County Board of County Commissioners' Reply to ICS's Response in Opposition to Motion for Summary Judgment (Doc. 61), filed July 31, 2017.

The parties have completed their briefing and the Court is otherwise fully advised on the premises. Upon consideration and review of the record, including all pleadings, deposition transcripts, affidavits, exhibits, and the parties' respective legal memoranda, Defendant/Third-Party Plaintiff Osceola County's motion for summary judgment against

Plaintiff Thomas Downing (Doc. 45) is **GRANTED**; Third-Party Defendant Inmate Calling Solutions, LLC's motion for summary judgment against Defendant/Third-Party Plaintiff Osceola County (Doc. 46) is **GRANTED**; and Defendant/Third-Party Plaintiff Osceola County's motion for summary judgment against Third-Party Defendant Inmate Calling Solutions (Doc. 47) is **DENIED**.

II.  BACKGROUND

Plaintiff, Mr. Thomas Downing ("Mr. Downing"), is a deaf individual that communicates using sign language. (Doc. 45-19, 7:22–8:3). In the early morning hours of March 18, 2012, Mr. Downing was arrested by the Osceola County Sheriff's Office for domestic battery. (Doc. 45-22). Shortly after arriving at Osceola County Corrections, Mr. Downing complained of chest pains and was taken to Osceola Regional Medical Center. (*Id.*). On March 19, 2012, Mr. Downing was transferred to the Osceola County Jail where he was provided with an inmate handbook that included a procedure for filing grievances. (Doc. 45 p. 5; Doc. 45-2, pp. 20–21; Doc. 45-19, 40:23–41:8). The entire time Mr. Downing was confined to the Osceola County Jail he was kept in the medical unit. (Doc. 45-19, 45:12–19). Mr. Downing requested access to an interpreter or videophone, (Doc. 45-13, p. 1), and on March 22, 2012, Mr. Downing was taken to use the Osceola County Jail's Telecommunications Device for the Deaf ("TDD machine"). (Doc. 45-19, 42:6–20; Doc. 47-2). Mr. Downing was accompanied to the TDD machine by a representative from Inmate Calling Solutions, LLC (ICS).[1] (Doc. 45-19, 43:19–25). Mr. Downing attempted to

---

[1] The County contracted with ICS to provide telecommunications services for inmates in the Osceola County Jail, including providing a functioning TDD machine for deaf inmates. (Doc. 24, p. 28). Pursuant to the Agreement, ICS was required to address service issues within various time windows, the longest window being within twenty-four (24) hours of reporting. (*Id.* at p. 31). The agreement contains an express indemnification clause, which states:

use two separate TDD machines, however both proved inoperable and only produced "garbled text, numbers, and letters" in "no particular order." (*Id.* at 42:14–43:13; 104:16–105:18; *see also*, Doc. 47-2). The ICS representative did not attempt to fix the TDD machine and Mr. Downing was unable to fix it himself. (Doc. 45-19, 90:25–91:2). At no point during Mr. Downing's incarceration were the TDD machines ever operable for Mr. Downing's use. (Doc 47-1, 18:5–19:7, 23:5–24:3; Doc. 47-2, p. 6).

At various times throughout Mr. Downing's time in jail, he communicated with correctional staff members using handwritten notes and verbal requests. (Doc. 45-19, 46:13–47:3, 77:22–78:6). These notes included statements such as: "get me defense lawyer and let them know that I'm deaf. Get interpreter," "Please can I go see Counselor," "Please get me videophone," and "I lost and not know what to do, No deaf devices for me" [*sic*]. (Doc. 45-4, pp. 4–7). Mr. Downing gave these notes to corrections officers and his case manager, and complained to "[a]nyone on shift, when there was a shift change, or any group turnover." (Doc. 45-19, 28:6–12, 47:15–48:3). It does not appear that these individuals indicated they would alert their superiors that Mr. Downing had requested an interpreter or attorney. Although Mr. Downing expressed his needs through notes and

---

> The CONTRACTOR agrees to be liable for any and all damages, losses, and expenses incurred, by the COUNTY, caused by the acts and/or omissions of the Contractor or any of its employees, agents, sub-contractors, representatives, or the like. The CONTRACTOR agrees to indemnify, defend and hold the COUNTY harmless for any and all claims, suits, judgments or damages, losses and expenses, including but not limited to, court costs, expert witnesses, consultation services and attorney's fees, arising from any and all acts and/or omissions of the CONTRACTOR, or any of its employees, agents, sub-contractors, representatives of the like.

(*Id.* at p. 22).

verbal requests, he has no recollection of filing a formal grievance as outlined in the inmate handbook. (Doc 45-19, 72:10–25; Doc. 45-4, ¶4).

Eventually, Mr. Downing sent a letter to an attorney requesting assistance. (45-19, 64:21–23). Mr. Downing met with the attorney he sent the letter on April 2, 2012. (*Id.* at 68:17–69:6). On April 5, 2012, after spending eighteen days in the Osceola County Jail, Mr. Downing was released. (*Id* at 69:7–19). Mr. Downing then filed this action on March 16, 2016, claiming discrimination in violation of the Americans with Disabilities Act (ADA) Title II 42 U.S.C. §§ 12131 and Section 504 of the Rehabilitation Act 29 U.S.C. § 794. (Doc. 1). Thereafter, on November 2, 2016, the County filed its Second Amended Third Party Complaint for Indemnification, Breach of Contract, and Breach of Contract to Provide Insurance against ICS. (Doc. 24).

### III. STANDARD OF REVIEW

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party moving for summary judgment must "cit[e] to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials" to support its position that it is entitled to summary judgment. Fed. R. Civ. P. 56(c)(1)(A). "The court need consider only the cited materials," but may also consider any other material in the record. Fed. R. Civ. P. 56(c)(3).

A factual dispute is "genuine" only if "a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" if the fact could affect the outcome of the lawsuit under the governing law. *Id.*

The moving party bears the initial burden of identifying those portions of the record demonstrating a lack of a genuine factual dispute. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1260 (11th Cir. 2004). If the movant shows that there is no evidence to support the non-moving party's case, the burden then shifts to the non-moving party to demonstrate that there are, in fact, genuine factual disputes which preclude judgment as a matter of law. *Porter v. Ray*, 461 F.3d 1315, 1320 (11th Cir. 2006).

To satisfy its burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, the non-movant must go beyond the pleadings and "identify affirmative evidence" which creates a genuine dispute of material fact. *Crawford-El v. Britton*, 523 U.S. 574, 600 (1998). In determining whether a genuine dispute of material fact exists, the court must read the evidence and draw all factual inferences therefrom in the light most favorable to the non-moving party and must resolve any reasonable doubts in the non-movant's favor. *Skop v. City of Atlanta*, 485 F.3d 1130, 1136 (11th Cir. 2007). Summary judgment should only be granted "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita*, 475 U.S. at 587.

## IV. DISCUSSION

### A. ADA and Rehabilitation Act Claims

The County moves for summary judgment on Mr. Downing's claims for compensatory damages under the ADA and Rehabilitation Act.[2] Congress enacted the ADA "to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities." 42 U.S.C. § 12101(b)(1). Title II of the ADA states:

> no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.

42 U.S.C. § 12132. To establish a prima facie case of disability discrimination under Title II of the ADA, the plaintiff must establish that (1) he or she is a qualified individual with a disability; (2) he or she was denied the full and equal benefit of services, programs, or activities; (3) and that the denial was by a public entity. *Am. Ass'n of People with Disabilities v. Harris*, 647 F.3d 1093, 1101 (11th Cir. 2011). Additionally, where, as here, a plaintiff alleges discrimination based on a public entity's refusal to provide a reasonable accommodation, the plaintiff must also establish that the plaintiff requested an accommodation (or the need for one was obvious) and that the public entity failed to provide a reasonable accommodation.[3] *See Shotz v. Cates*, 256 F.3d 1077, 1079 (11th Cir. 2001); *see also Smith v. Rainey*, 747 F. Supp. 2d 1327, 1338 (M.D. Fla. 2010) ("In

---

[2] Though the County addresses injunctive relief in its briefing, Mr. Downing does not seek injunctive relief and the Court does not address that issue at this time.

[3] The Rehabilitation Act uses the same standards as the ADA with the addition of a federal funding requirement. *See, e.g.*, *Cash v. Smith*, 231 F.3d 1301, 1305 n.2 (11th Cir. 2000). The County does not dispute that the Osceola County Jail receives federal funding and therefore the Rehabilitation Act may be analyzed simultaneously.

7

cases alleging a failure to make reasonable accommodations, the defendant's duty to provide a reasonable accommodation is not triggered until the plaintiff makes a 'specific demand' for an accommodation."). The County does not appear to dispute the first or the third prong—that Mr. Downing is a qualified individual and that the Osceola County Jail is a public entity.

Regulations at the time of Mr. Downing's arrest required that an entity "furnish appropriate auxiliary aids and services where necessary to afford an individual with a disability an equal opportunity to participate in, and enjoy the benefits of, a service, program, or activity of a public entity." 28 C.F.R. § 35.160(b)(1) (2012). Here, the Osceola County Jail provided Mr. Downing with a TDD machine. (Doc. 45-19, 42:6–20). Although this may qualify as an equivalent service when operating correctly, the machine provided was broken and Mr. Downing could not communicate using the device. (*Id.* at 42:14–43:13; 104:16–105:18). After discovering the TDD machine did not work, Mr. Downing requested either an interpreter or a video phone. (Doc. 45-4, Ex. A; 45-19 60:20–61:5). Determining whether the County sufficiently provided "appropriate auxiliary aids where necessary" is inherently a fact-intensive inquiry and is not appropriate for summary judgment at this time. *See, e.g., Liese v. Indian River Cty. Hosp. Dist.*, 701 F.3d 334, 342 (11th Cir. 2012) (citing *Chisolm v. McManimon*, 275 F.3d 315, 327 (3d Cir.2001) ("Generally, the effectiveness of auxiliary aids and/or services is a question of fact precluding summary judgment.")).

### B. Compensatory Damages

The County has moved for summary judgment on Mr. Downing's claim for compensatory damages under the ADA and the Rehabilitation Act. To recover

compensatory damages under the ADA and the Rehabilitation Act, Mr. Downing must demonstrate "intentional discrimination or bad faith." *Wood v. President & Trs. of Spring Hill Coll. in City of Mobile*, 978 F.2d 1214, 1219 (11th Cir. 1992). In other words, "good faith attempts to pursue legitimate ends are not sufficient to support an award of compensatory damages . . . ." *Id.* In *Liese v. Indian River County Hospital District*, the Eleventh Circuit held that the deliberate indifference standard was proper for defining intentional discrimination. 701 F.3d 334, 348 (11th Cir. 2012).

To establish deliberate indifference, a plaintiff must show that "'the defendant *knew* that harm to a federally protected right was substantially likely and . . . *failed* to act on that likelihood.'" *Liese*, 701 F.3d at 344 (quoting *T.W. ex rel. Wilson v. Sch. Bd.*, 610 F.3d 588, 610 (11th Cir. 2010)). Deliberate indifference is an "exacting standard," *Doe v. Sch. Bd.*, 604 F.3d 1248, 1254–55 (11th Cir. 2010), as the indifference must be the result of a "deliberate choice." *Liese*, 701 F.3d at 344. Negligence, even if gross, is not enough. *Id.*

For an entity to be liable, the deliberate indifference must be from "an official who at a minimum has authority to address the alleged discrimination and to institute corrective measures on the organization's behalf [and who] has actual knowledge of discrimination in the organization's programs and fails adequately to respond." *Id.* at 345 (quoting *Gebster v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 290 (1998). The Eleventh Circuit in *Liese* specifically noted that this analysis has two distinct parts, "there must be (1) 'an official' who, (2) 'at a minimum,' has the requisite knowledge and authority." *Id.* at 349 (quoting *Gebster*, 524 U.S. at 287–88). "The question of how far up the chain of

command one must look to find an 'official' is necessarily a fact-intensive inquiry, since an official's role may vary from organization to organization." *Id.* at 350.

Here, both parties agree that several corrections officers and case managers were aware that Mr. Downing had requested an interpreter and video phone. (Doc. 45 p. 6; Doc. 52, p. 7). The County argues that these employees were not officials and did not have the authority to adequately respond. (Doc. 45, pp. 19–20; Doc. 45-2, ¶14). Moreover, the jail officials with authority, namely, the Chief of Osceola County Corrections Department, the Osceola County Jail's Quality Risk Manager, and the jail's ICS liaison, did not have knowledge of the alleged discrimination. (Doc. 45, pp. 12–13; Doc. 45-2, ¶11). The County has sufficiently demonstrated that no official with authority to address the alleged discrimination and institute corrective measures had knowledge of the alleged discrimination, and, therefore, the burden shifts to Mr. Downing to demonstrate that there are genuine factual disputes.

Mr. Downing argues corrections officers and case managers have authority pursuant to the Osceola County Corrections Department O.P. # 800.10(IV)(A)(3). (Doc. 52, p. 8). Mr. Downing does not offer any other evidence to rebut the County's affidavits. A review of Osceola County Corrections Department O.P. # 800.10 shows that *housing officers* are to provide "access to the TDD machine or other telecommunicating device within a reasonable length of time" from receipt of a written request, and, more importantly, the "*housing officer* shall . . . ensure inmates have reasonable access to telephones." (Doc. 52-1 (emphasis added)). Mr. Downing is correct that the manual acknowledges other employees of the correctional facility, specifically housing officers, may have had authority to remedy the situation. However, Mr. Downing has not provided

evidence showing that either housing officers had knowledge of the alleged discrimination or that the staff members that were aware had any authority to address the alleged discrimination. (Doc. 52, p. 8–9). Moreover, even if the Court were to assume, for the sake of argument, that one of the unidentified staff members that Mr. Downing alerted to the alleged discrimination was a housing officer, O.P. # 800.10 is unclear if the housing officers have complete discretion or could be overruled by the Deputy Chief to which they would report the inoperable TDD machine.[4] *See, e.g., Liese v. Indian River Cty. Hosp. Dist.*, 701 F.3d 334, 345 (11th Cir. 2012) ("While any Hospital staff member, be it a doctor or a nurse, had the authority to ask for an interpreter . . . doctors could overrule a nurse's decision to not provide an auxiliary aid. In contrast, there is no evidence here to suggest that the doctors' decisions were subject to reversal."). In short, Mr. Downing has not presented evidence that any employee with requisite supervisory authority had knowledge of the alleged discrimination. Mr. Downing's claim for compensatory damages fails since the record, as it exists before the Court, fails to create an issue of fact as to whether an official of the County, who at a minimum had authority to address and remedy the alleged discrimination, had actual knowledge of the alleged discrimination.

### C. Indemnification

For clarity and completeness of the record, the Court also addresses the cross-motions for summary judgment filed by the County and ICS. (Docs. 46–47). The County asserts Mr. Downing's underlying action stems from ICS' breach of their agreement, and, as such, ICS must indemnify the County. (Doc. 47, pp. 8–10). ICS claims that any claim for indemnification is preempted by federal law. (Doc. 46, pp. 9–12). The Court must first

---

[4] The County argues as much in its Reply brief. (Doc. 59, p. 5, Ex. A ¶8).

address whether ICS waived its preemption defense since it failed raise it in its answer and affirmative defenses.

Usually a defendant intending to assert an affirmative defense must raise it in a responsive pleading, and failure to do so typically results in a waiver of the defense. *See Am. Nat'l Bank v. FDIC*, 710 F.2d 1528, 1537 (11th Cir. 1983). However, the Eleventh Circuit has recognized, that a defendant does not waive an affirmative defense if the earlier omission from responsive pleadings does not prejudice the plaintiff. *See Proctor v. Fluor Enters., Inc.*, 494 F.3d 1337, 1350 (11th Cir. 2007) (acknowledging that, in cases where federal case law has identified specific affirmative defenses, we have "examined whether a plaintiff had notice of the unpled defense or was prejudiced by the lack of notice" in determining whether the defendant waived the defense).

The Eleventh Circuit has also concluded that an omission of an affirmative defense in responsive pleadings does not necessarily prejudice a plaintiff when the defendant first raises the defense in a pretrial motion or discussion. *See Sweet v. Sec., Dept. of Corrections*, 467 F.3d 1311, 1321 n.4 (11th Cir. 2006) (noting that "it is settled that a plaintiff is not prejudiced by a defendant's failure to comply with Rule 8(c) if the plaintiff is provided notice of the affirmative defense by some other means," such as the defendant's motion for summary judgment); *Steger v. Gen. Elec. Co.*, 318 F.3d 1066, 1077 (11th Cir. 2003) (holding that the district court did not err in permitting evidence of the Equal Pay Act affirmative defenses when, though not raised in responsive pleadings, the affirmative defenses had been raised in pretrial conference); *Grant v. Preferred Res., Inc.*, 885 F.2d 795, 797–98 (11th Cir. 1989) (determining that, though the defendant did not raise a

statute-of-limitations defense in its responsive pleadings, it raised the defense in a motion for summary judgment filed one month before trial and thereby put plaintiff on notice that the defendant would rely on the defense).

Here, ICS attempted to add the defense just prior to the dispositive motions deadline (Doc. 41), addressed preemption in its motion for summary judgment (Doc. 46), and raised the defense in response to the County's motion for summary judgment. (Doc 54). The County was able to substantively respond to the defense each time it was raised by ICS. (Docs. 50, 55, 61). None of the County's responses argue that it would be prejudiced by ICS' failure to timely assert its preemption defense. Since the County fails to provide evidence that it is prejudiced by the untimely defense, and given that the defense is purely legal in nature where no additional fact discovery would be necessary, ICS is allowed to raise the defense at this late stage in the proceedings.

Turning to ICS' defense, "the question is whether state law is pre-empted by a federal statute . . . ." *POM Wonderful LLC v. Coca-Cola Co.*, 134 S. Ct. 2228, 2236 (2014) (citing *Wyeth v. Levine*, 555 U.S. 555, 563 (2009)). Whether ADA or Rehabilitation Act claims preempt state law claims for indemnification is a novel issue in the Eleventh Circuit, however our analysis is guided by *Wiersum v. U.S. Bank, N.A.*, 785 F.3d 483 (11th Cir. 2015).[5] Of the three types of preemption—express, field, and conflict

---

[5]As the parties note, the Fourth Circuit and Ninth Circuit have addressed this issue and are split. *See Equal Rights Ctr. v. Niles Bolton Ass'n*, 602 F.3d 597 (4th Cir. 2010); *City of L.A. v AECOM Servs.*, 854 F.3d 1149 (9th Cir. 2017). Though neither case is directly on point, the instant case more clearly follows the facts as set forth in *Equal Rights Center*, especially given the similar language used in the indemnification agreements. *Compare Equal Rights Ctr.*, 602 F.3dat 599 ("indemnify Archstone from and against all losses, claims, liabilities, injuries, damages[,] and expenses, including attorneys' fees and litigation costs . . . arising out of or resulting from or in connection with, the performance or failure to perform, by the Architect or its employees") *with Downing v. Osceola Cty. Bd.*, Case No. 6:16-cv-872 (M.D. Fla. July 3, 2017) ("[ICS] agrees to indemnify, defend and hold the [County] harmless for any and all claims, suits, judgments or damages, losses and expenses, including but not limited to, court costs, expert witnesses, consultation services and attorney's fees, arising from any and all acts and/or omissions of [ICS]."). Moreover, the Ninth

preemption—both parties agree that the Court's analysis should focus on conflict preemption. (Doc 46, p. 10; Doc. 55, p. 9). "Conflict preemption exists 'where it is impossible for a private party to comply with both state and federal requirements or where state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'" *Wiersum*, 785 F.3d at 486 (11th Cir. 2015) (quoting *English v. Gen. Electric Co.*, 496 U.S. 72, 79 (1990)).

"Pre-emption fundamentally is a question of congressional intent," which requires statutory interpretation. *English*, 496 U.S. at 78–79. "As in all cases involving statutory construction, our starting point must be the language employed by Congress, and we assume that the legislative purpose is expressed by the ordinary meaning of the words used." *Am. Tobacco Co. v. Patterson*, 456 U.S. 63, 68 (1982) (citations and internal quotation marks omitted). "The first rule in statutory construction is to determine whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute." *Shotz v. City of Plantation, Fla.*, 344 F.3d 1161, 1167 (11th Cir. 2003) (citation and internal quotation marks omitted). "The 'plain' in 'plain meaning' requires that *we look to the actual language used in a statute, not to the circumstances that gave rise to that language.*" *CBS Inc. v. PrimeTime 24 Joint Venture*, 245 F.3d 1217, 1224 (11th Cir. 2001) (emphasis added).

Congress' intent in passing the ADA was to establish a regulatory framework through which to "provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities [and] to provide clear, strong,

---

Circuit noted the facts before it distinguished its finding from *Equal Rights Center*, because, *inter alia*, the "[indemnitee] sought to allocate the *full* risk of loss to the [indemnitor]" allowing the indemnitee to "completely insulate" itself from all responsibility.

consistent, enforceable standards addressing discrimination against individuals with disabilities" and extended the anti-discrimination prohibition embodied in section 504 of the Rehabilitation Act of 1973 to all actions of state and local governments. 42 U.S.C. § 12101(b); *see also*, H.R. Rep. No. 101–485(II), at 84 (1990). Both the ADA and the Rehabilitation Act would be undercut by allowing the County to shield itself from liability through indemnification.

Moreover, the main focus of this lawsuit is the failure of the County's policies and procedures. Mr. Downing did not file this case solely because of a broken TDD machine, but rather, because, *inter alia*, he was not able "to participate in or benefit from programs and services the jail offers other inmates." (Doc. 1, ¶25). Plaintiff's allegations are based on the County's failure to maintain appropriate policies or practices that ensure compliance with the ADA and Rehabilitation Act. State and local governments implement policies and practices as part of their standard operations, and if they were permitted to contract away their liability when implementing policies and procedures meant to ensure compliance with federal disability regulations, as the County attempts to do here, they would impermissibly be delegating their duties under the ADA and Rehabilitation Act, and would diminish any incentive to ensure compliance with the statutes. To be clear, a claim for indemnification under state law would frustrate the basic enforcement of federal anti-discrimination law. Accordingly, the County's state law claims for indemnification, Counts I and II of the Third Party Complaint (Doc. 24), fail. For the foregoing reasons, the County's motion for summary judgment against ICS for indemnification (Doc. 47) is denied as moot.

**V. CONCLUSION**

It is therefore **ORDERED AND ADJUDGED** as follows:

1. Osceola County's motion for summary judgment against Plaintiff Thomas Downing (Doc. 45) is **GRANTED**;

2. ICS' Dispositive Motion for Final Summary Judgment and Incorporated Memorandum of Law (Doc. 46) **GRANTED**;

3. Osceola County Board of County Commissioner's Motion for Summary Judgment and Incorporated Memorandum of Law (Doc. 47) is **DENIED**; and

4. The Clerk of Court is **DIRECTED** to close the file.

**DONE AND ORDERED** in Orlando, Florida on November 16, 2017.

_____
PAUL G. BYRON
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties